IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| APM & ASSOCIATES, INC. and | § | |
| AFISU OLABIMTAN, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:09-cv-159 |
| | § | |
| NORTH TEXAS TOLLWAY | § | |
| AUTHORITY, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION & ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

Before the court are the following:

1. Defendant North Texas Tollway Authority's Motion to Dismiss and Brief in Support (de # 3);

2. Plaintiffs' Response to North Texas Tollway Authority's Motion to Dismiss and Brief in Support (de # 5);

3. North Texas Tollway Authority's Reply in Support of its Motion to Dismiss (de # 7);

4. A Letter Brief to the Court Submitted by Defendant, Dated May 20, 2009; and

5. Plaintiffs' Surreply to Defendant's Further Submission Dated May 20, 2009, in Connection with Defendant's Motion to Dismiss (de # 16).[1]

Having considered the Motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the Defendant's Motion should be GRANTED.

## I. BACKGROUND

APM & Associates is a full service civil and structural engineering firm owned by Afisu

---

[1] Also pending is the "Plaintiffs' Motion for Leave to File Second Amended Complaint" (de # 6). The court is of the opinion that the Motion for Leave should be, and hereby is, GRANTED. The court will, therefore, consider the Defendant's Motion to Dismiss in the context of the Second Amended Complaint.

Olabimtan, an African American with roughly 28 years of experience in civil engineering. APM is certified as a State of Texas Historically Underutilized Business and as a Disadvantaged Business Enterprise ("DBE") by the North Texas Regional Certification Agency. The North Texas Tollway Authority (hereinafter, "the Authority") is a political subdivision of the State of Texas charged with constructing and maintaining tollway projects in North Texas. In order to receive funds from the Federal Highway Administration, the Authority must have a DBE program. 49 C.F.R. § 26.21. On September 21, 2008, the Authority issued a "Request for Qualifications," soliciting bids on the design of various sections of the Trinity Parkway, a tollway proposed to be built in the Dallas, Texas area. APM timely submitted a bid for Section 3 of the project on October 13, 2008.

The Authority's Selection Committee "was required by the RFQ to either (a) select the 'most highly qualified' provider of the requested services with which to negotiate a contract for a fair and reasonable price or (b) establish a 'short-list' of firms which would be invited to proceed to Stage Two Evaluations." (Pls.' Sec. Am. Compl. ¶ 25.) The Selection Committee chose the second option, setting up short lists for the design of each of the five sections of the Trinity Parkway project. Each participating firm was allowed to choose which section of the Trinity Parkway for which it would submit a design proposal. Twenty proposals were submitted: four for Section 1, three for Section 2, seven for Section 3, two for Section 4 and four for Section 5. As mentioned above, APM placed a bid on Section 3. Two firms from each group were short-listed and interviewed. Therefore, both firms that bid on Section 4 were short-listed, while two of the four firms that bid on Section 5, for example, were short-listed. APM was not short-listed, and its design proposal for Section 3 was not selected.

On November 17, 2008, Olabmitan appeared at the Authority's monthly board meeting and

stated his objections to the bid selection process. On December 16, 2008, counsel for the Plaintiffs delivered a demand letter to the Authority, stating their belief that the selection process was arbitrary and discriminatory. The letter also contained a demand that the Authority issue a new RFQ and begin the design selection process anew. The Plaintiffs filed this lawsuit in state court on December 29, 2008 alleging claims under state law. On March 10, 2009, the Plaintiffs filed a First Amended Petition, asserting additional claims under both federal and state law. On April 6, 2009, the Authority filed its Notice of Removal under 28 U.S.C. § 1441(b).

In their Second Amended Complaint, the Plaintiffs allege claims under Section 1983 for violation of their equal protection, due process and freedom of association rights, Sections 1981 and 2000d of Title 42 of the United States Code and various sources of Texas state law. The Authority filed this Motion under Rule 12(b)(6), arguing that the Plaintiffs have failed to state a claim upon which relief may be granted. The Authority also attacks Olabimtan's standing to assert the claims in this lawsuit, arguing that any claims APM may have belong to it and not to Olabimtan individually. The court finds that the Plaintiffs have failed to state a colorable claim under federal law. The court need not address the standing issue because the Plaintiffs' federal claims fail no matter which party asserts them. Because the court dismisses each of the Plaintiffs' federal claims, the state law claims that remain pending shall be remanded to the 366th Judicial District Court of Collin County, Texas.

## II. LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are disfavored and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). In passing on a Rule 12(b)(6) motion, a court must accept all of the plaintiff's allegations as true. *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir.

2005). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions;" "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *id*. at 555, and into the "realm of plausible liability." *Id*. at 557 n.5. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

### III. DISCUSSION & ANALYSIS

*A.    Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment serves "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). Essentially, similarly situated persons should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal protection claim may be asserted by a "class of one" where it is alleged that the plaintiff has been intentionally treated

differently from others similarly situated and there is no rational basis for the difference in treatment. *See Vill. of Willowbrook*, 528 U.S. at 564.

The Complaint must be supported by factual allegations that the Plaintiffs were "intentionally treated differently from others similarly situated" and "that there [was] no rational basis for the difference in treatment." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006). "[D]isparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).

The Plaintiffs have failed to allege facts that would create plausible liability under the Equal Protection Clause through Section 1983. The only two facts alleged by the Plaintiffs in support of their Equal Protection claim are the description of the Authority's selection process and that the Authority "provided little or no public outreach," limiting the number of African American owned firms that submitted proposals. (Sec. Am. Compl. at ¶ 29a.) The latter fact cannot support the Plaintiffs' claim because, assuming the Authority had a duty to reach out specifically to minority owned firms, its alleged failure to do so did not harm the Plaintiffs because the Plaintiffs were clearly aware of the bid solicitation. The Plaintiffs sue not on behalf of a class of minority owned firms, but on their own accord. The Plaintiffs thus lack standing to bring suit on this allegation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating, for purposes of standing, that the conduct complained of must be connected to the alleged injury).

And as can easily be gleaned from the allegations surrounding the selection process, the Plaintiffs were treated precisely the same as every other contractor, negating any claim under the Equal Protection clause. They submitted their proposal for the design of a section of the Trinity

Parkway and, like the other bidding firms, could do no more than hope to be short-listed so that they could present their proposal for consideration alongside the other firm that was fortunate enough to be short-listed for that section. APM, just like every other firm that submitted a bid, "could have increased its chances of being shortlisted . . [only by] predict[ing] in advance which Section would have the fewest firms [bid on its design]." (*Id*. at ¶ 29b.) Simply stating that the process was concocted to favor "pre-selected . . . white firms" does not make it so. (Sec. Am. Compl. at ¶ 74.) All firms, regardless of the racial makeup of their ownership, took part in the same process. It is precisely these kinds of conclusory statements that *Twombly*, and now *Iqbal*, teach cannot support a viable claim. Because the Plaintiffs have failed to allege facts that would support a claim of unequal treatment violative of the Equal Protection Clause, their claim must be dismissed. *See City of Cleburne*, 473 U.S. at 439; *Whiting*, 451 F.3d at 348.

B.  Due Process—Property Right

The Plaintiffs also allege that they held a property right in the award of the contract. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To determine whether the Plaintiffs held a protected property right, the court looks to the law of the state that confers the purported right. *Id*. at 578.

The RFQ was issued under the Texas Professional Services Procurement Act, TEX. GOV'T CODE § 2254.001, *et seq*. (Vernon 2009). The Procurement Act provides that bid selections shall be made "on the basis of demonstrated competence and qualifications to perform the services; and for a fair and reasonable price." *Id*. at § 2254.003(a)(1)-(2). The RFQ itself provided that the

Authority would accomplish this objective by either selecting what it deemed to be the most highly qualified offer or by short-listing firms and then interviewing the finalists. APM's status as a bidder did give it "a particular interest in assuring that bids were made and evaluated fairly and according to the terms set forth in the solicitation." *El Paso Cmty. Partners v. B&G/Sunrise Joint Venture*, 24 S.W.3d 620, 626 (Tex. App.—Austin 2000, no pet.).

However, merely entering a bid for a public contract does not confer a property right in the receipt of that contract. *DRT Mech. Corp. v. Cullen County*, 845 F. Supp. 1159, 1162 (E.D. Tex. 1994). "A bid is simply an offer and is not binding until accepted by another." *Id*. Thus, APM's property interest in the integrity of the selection process did not translate into a property interest in the actual award of the contract. *See Perry v. Port of Houston Auth.*, 118 F. Supp. 2d 770, 773 (S.D. Tex. 2000); *SpawGlass Constr. Corp. v. City of Houston*, 974 S.W.2d 876, 880-81 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Several courts have found that the law in some states does indeed create "a property interest in a competitively bid public contract *for the lowest bidder* that complied with the bidding specifications and procedures." *Harris v. Hays*, 452 F.3d 714, 719 (8th Cir. 2006) (emphasis added); *see Shepard v. City of Batesville*, No. 2:04-CV-330-D-B, 2007 U.S. Dist. LEXIS 1519, at *23-27 (N.D. Miss. Jan 7, 2007) and cases cited therein. But APM has made no such allegation. Taken as true, APM's allegations evince no more than "a unilateral expectation" of being awarded the contract. *Roth*, 408 U.S. at 577. Such will not suffice to create a constitutional property right.

C.   *Substantive Due Process*

The substantive component of the Fourteenth Amendment's Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures

used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Substantive due process is implicated where the state's actions are arbitrary and not related to a legitimate government interest, or where the state engaged in conduct that shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1988).

At best, the Second Amended Complaint can be construed as no more than a disagreement with the process set up to select winning bids. APM, of course, knew of, and agreed to participate in, the process. Merely stating that the process was arbitrary and capricious does not make it so; the Plaintiffs are required to supply factual allegations supporting their conclusion. *Twombly*, 550 U.S. at 555. Nowhere in the Second Amended Complaint do the Plaintiffs allege that the Authority deviated from the procedure it established or that APM was required to comply with some procedure different from that required of other bidders. A state's award of a contract to one bidder over another does not shock the conscience. *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007).[2] The court finds that the Plaintiffs have failed to state a claim that they have been deprived of substantive due process.

D.      *Procedural Due Process*

In order to prevail on a claim of lack of procedural due process, the Plaintiffs must show that "(1) they were deprived of a protected property interest and (2) they were denied the process due them." *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)). "Process is not an end in itself. Its

---

[2]The court notes that Marco alleged that its bid was financially superior to that of the winning contractor. *Id*. at 672. APM does not allege that its bid was superior to the winning bid in this case, making its substantive due process claim even weaker than that rejected by the Fifth Circuit in *Marco*.

constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 771 (2005) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)). Having failed to allege a cognizable claim that they were deprived of a substantive right protected by the Due Process Clause, the Plaintiffs' procedural due process claim must also be dismissed.

E.  *Freedom of Association*

The Plaintiffs also assert a First Amendment "freedom of association" claim, alleging that the Authority's bid selection process impinged on Olabimtan's right to associate with APM on the basis of race. As discussed above, the pleadings do not allege facts which would create any plausibility in such an inference. In addition, the Supreme Court recognizes two types of freedom of association claims, neither of which is applicable here. First, the Court has said that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State." *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). The Court has also "recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id*.

The Plaintiffs cite *NAACP v. Alabama*, 357 U.S. 449 (1958) in support of their freedom of association claim. There, the Court held that the State of Alabama could not compel the NAACP to disclose the names and addresses of its Alabama members. *Id*. at 466. The Court rested its resolution of the case on the uncontroversial assertion that the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Id*. at 460. The

Plaintiffs' allegations plainly do not implicate such interests. And while the Plaintiffs have a right to associate in pursuit of their economic interests, as discussed above, the conclusion that the Authority's actions deprived them of that pursuit—either in this or future instances—simply does not flow from the facts alleged. Under the Plaintiffs' theory, every contractor who ever lost a bid for a public contract would be able to assert a freedom of association claim. Because the Plaintiffs have not alleged facts that amount to a deprivation of their freedom of association, that claim should be dismissed.

F.     *42 U.S.C. § 1981*

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." As discussed above, the allegations contained in the Second Amended Complaint fall well short of establishing a plausible inference that the Authority in any way impaired the Plaintiffs' right to make or enforce any contract. To the contrary, the allegations establish that the Plaintiffs willingly participated in a process which necessarily creates winners and losers. Critically, the Plaintiffs faced no unique disadvantage with regard to their participation in the process. Accordingly, the Plaintiffs' Section 1981 claim should be dismissed.

G.     *42 U.S.C. § 2000d*

Section 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." A private right of action exists for individuals who have suffered the type of harm Section 2000d seeks to eliminate. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). It is "beyond dispute" that Section

2000d "prohibits only intentional discrimination." *Id.*; *accord S.D. v. Hood*, 391 F.3d 581, 606 (5th Cir. 2004). For the same reasons that the Plaintiffs' Equal Protection claim fails, their claim under Section 2000d should be dismissed. *See* Part III.A., *supra*.

In their Surreply, the Plaintiffs request another opportunity to amend their Complaint should the court decide, as it has, to dismiss any or all of the Plaintiffs' claims. Rule 15(a) provides that leave should freely be given "when justice so requires." The court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Price v. Pinnacle Brands*, 138 F.3d 602, 608 (5th Cir. 1998).

The court finds that justice would not be served by allowing the Plaintiffs to file a fourth pleading. It is highly unlikely that the Plaintiffs will be able to provide additional detail, the absence of which is fatal to their federal claims. This finding is particularly highlighted by the fact that the court granted the Plaintiffs' Motion for Leave in footnote 1 of this order and considered the claims as asserted in the Plaintiffs' Second Amended Complaint. Granting leave again so soon after the Plaintiffs' latest attempt to state federal claims would not be in the interest of justice. Because the court finds that the Plaintiffs have been unable to cure the above-discussed deficiencies and that amendment at this time would be futile, the court declines the Plaintiffs' invitation to grant leave to amend.

Because the court dismisses each of the Plaintiffs' federal claims, the court declines to exercise its supplemental jurisdiction over the remaining state law claims. *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); 28 U.S.C. § 1367(c)(3) (2006).

## IV. CONCLUSION

Based on the foregoing, the court finds that the following claims should be, and hereby are, DISMISSED WITHOUT PREJUDICE under Rule 12(b)(6) because the Plaintiffs' Second Amended Complaint fails to provide sufficient factual allegations under *Twombly*:

1. Plaintiffs' constitutional claims of denial of Equal Protection, Due Process and freedom of association under 42 U.S.C. § 1983;

2. Plaintiffs' claim under 42 U.S.C. § 1981; and

3. Plaintiffs' claim under 42 U.S.C. § 2000d.

In addition, the court finds that the Plaintiffs' request for leave to file a Third Amended Complaint should be, and hereby is, DENIED. The court is, therefore, of the opinion that "Defendant North Texas Tollway Authority's Motion to Dismiss and Brief in Support" (de # 3) should be, and hereby is, GRANTED. Any other motions that remain pending should be, and hereby are, DENIED AS MOOT.

Because no federal issues remain in the lawsuit, the court declines to exercise its supplemental jurisdiction over the remaining state law claims. Accordingly, it is

ORDERED that this case is REMANDED to the 366th Judicial District Court of Collin County, Texas.

IT IS SO ORDERED.

**SIGNED this the 14th day of July, 2009.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE